## The People on the relation of Robert W. Cummings, v. The State Treasurer.

The ninth section of the Act for the sale of the State Swamp Lands, (*Laws of 1858, p.* 173) made provisions for two distinct classes of purchasers; namely, settlers and occupants of such lands at the time of the passage of such act, who should have been such December 1st, 1857, and owners and occupants of adjoining lands, who were such December 1st, 1857.

Occupancy of the adjoining lands, under this act, might consist of cultivation and use, without actual residence, or might be by a tenant; and the Commissioner of the State Land office had no right to require actual residence.

Though this act made void any certificate of purchase under it, issued through mistake, fraud, &c., it did not confer upon the Commissioner of the Land office power to adjudge void and cancel such certificate, and he could not re-sell the land unless the certificate was voluntarily returned, or adjudged void by the proper court.

*Heard November 1st. Decided November 9th.*

Application for Mandamus.

Soon after the passage of the "Act to provide for the Sale of the Swamp Lands, and the Reclamation thereof, and to secure the Pre-emption claims of Settlers thereon," approved February 4th, 1858, the then commissioner of the State Land Office issued a circular of directions to persons making application for the benefit of the act, and giving a construction to its provisions. The following is an extract from this circular:

"The first half of" [section nine] "relates entirely to persons having actually resided upon state swamp land since first of December last. If such a person is the owner of eighty acres of land elsewhere, he is debarred from any pre-emption claim under this law. If not, he can have enough swamp land (if it joins him, and no person resides upon it properly entitled under this act to pre-empt it) to make him up, with the subdivision he lives on, 160 acres, by paying one-fourth of the $1.25 at the expiration of one year, and the balance at his option in ten years. But if (as in the last half of section 9) a person has actually resided upon lands of his *own* since the first of last December, such person (if he otherwise properly complies.

with the law) can have enough swamp land, if it joins him (not merely corner) to make him up, with what he owns, 160 acres, by paying one-fourth of the $1.25 at the time he applies for it, and the balance in ten years, at the option of the purchaser. When all this requirement shall be properly complied with, this last class of pre-emptors receive a certificate in accordance with the law. But the first class of pre-emptors, that is, those who have lived on swamp land from first of December last, after having made satisfactory affidavit and proof of their pre-emption, have their affidavits and proofs filed, and their names recorded on book, to receive their proper certificate at the expiration of the year, or whenever they shall pay one-fourth of the purchase price, if sooner than one year. *None but actual settlers on state swamp lands, or on other lands, the first of December, 1857, claiming the right to enter or pre-empt swamp lands adjoining them, have any right whatever of pre-emption under this law,* until after the expiration of the sixty days given to pre-emptors first to perfect their claims, and until the time of the public offering. The law designs to favor the *actual* settler *first*, and the one who *intends* to *settle* next."

After the issue of this circular, on March 17th, 1858, Daniel S. Bentley, claiming to be entitled, as owner and occupant of an adjoining lot, to pre-empt a parcel of swamp lands in Lapeer county, made application in due form to the commissioner for that purpose, stating therein, as required by the commissioner's forms, that he had "owned and resided" upon said adjoining lot from and since the first day of December, 1857. The application was sworn to, and accompanied by the affidavit of another person of its truth; and the commissioner issued to Bentley the usual certificate of purchase of said swamp lands, on receiving payment of one-fourth the purchase price. This certificate Bentley assigned to the relator, April 17th, 1858.

July 7th, 1858, the commissioner wrote and sent to

PEOPLE v. STATE TREASURER.

Bentley the following letter, which will sufficiently explain itself, and show the action which the commissioner had taken.

"*State Land Office: Lansing*, July 7th, 1858.

"To DANIEL S. BENTLEY. *Dear Sir:* I have this day cancelled and disannulled a certificate issued to you" (describing it) "which was based upon your affidavit, dated March 17th, 1858, in which you say you have owned and resided upon lands adjoining said swamp lot from and since December 1st, 1857, which, according to affidavits now on file in this office, of L. W. Hinman, Wm. H. Clark, jr., Stephen R. Woodward, and James W. Clark, appears not to be true—the said affidavits stating that you did not nor do not now reside on said lands adjoining, &c.

"I have also this day issued a certificate to Wm. H. Clark for the above land, to whom it properly belongs. You will therefore be pleased to return your certificate to this office, and receive your money from the treasurer.

"I refer you to chapter 60 § 56 of the Revised Statutes of this state for my authority in cancelling certificates thus obtained, either by fraud or mistake, or not in accordance with law or the facts in the case.

"Very respectfully, your ob't. servant

S. B. TREADWELL, Comr.

February 9th, 1859, the relator made application to the state treasurer to pay the balance of the purchase price on the certificate so assigned to him, but the treasurer refused to receive the same, basing his refusal upon the foregoing action of the commissioner. The relator thereupon applied to the court for a *mandamus* to compel the state treasurer to receive from and receipt to him the said balance.

*T. Romeyn*, for relator.

Actual *residence* on the adjoining lands was not requisite to "*occupancy*."—*Opinions of Att'y General as to Public*

*Lands, No.* 72, *p.* 108; also, *Instructions, No.* 493, *p.* 551, *and No.* 505, *p.* 560, *same vol.* The commissioner, therefore, cancelled the certificate for a cause not allowed by law.

But the commissioner had no power to cancel the certificate for any cause. Such a power would be a judicial power, and should not be held conferred on a subordinate executive officer, except by necessary construction. The statute, if it intends to confer such power, is unconstitutional.—10 *Johns.* 23; 12 *Johns.* 83; 13 *Johns.* 521; 5 *Mich.* 410.

*J. M. Howard, Attorney General,* for respondent:

The statute left it to the commissioner to determine whether any illegality, fraud, or mistake, existed in the procurement of the certificate; and, having the power, his decision can not, in the absence of fraud, be reviewed collaterally by any other officer or tribunal.—6 *Pet.* 694, 729; 2 *Denio,* 26, 33; 1 *Brod. & Bing.* 432 (*the Bum-boat Case*); 3 *Barb.* 175; 12 *Pick.* 582. The commissioner having the power to recall and cancel the certificate in a certain contingency, the purchaser took it subject to that condition.— 13 *How.* 40, 47.

MARTIN Ch. J.:

The late commissioner of the land office committed a very great error in his construction of the ninth section of the act for the sale of swamp lands (*Sess. L.* 1858, *p.* 173), and in the instructions contained in his circular letter of February 24th, 1858. This section made provision for two distinct classes of purchasers, viz.: settlers and occupants of such lands at the time of the passage of the act, who should have been such settlers thereon on the 1st of December, 1857, and owners and occupants of adjoining lands, who were such on said first of December. The commissioner appears to have overlooked this distinction between settlers upon the lands, and owners and occupants of those ad-

joining, and to have required, as a condition to the right to purchase, actual residence in each case. This, it is apparent, is not the requirement of the law. In the one case, residence is requisite; in the other it is not, for there may be ownership and occupancy without actual residence. That there may be ownership without residence, requires no demonstration, and occupancy may consist of cultivation and use, without actual residence, or may be by a tenant.

This error, and the supposition that he had power to annul the sale, and convey the land to another, with the first certificate outstanding, led the late commissioner, upon the evidence offered by Clark, to annul the sale to Bentley, and sell the same land to Clark. But we do not conceive that he had the power to annul the sale unless the certificate was surrendered up. The statute (*Comp. L.* § 2498) enacts that in case of any sale of land made by mistake, or not in accordance with law, or obtained by fraud, the same shall be void; and that no certificate of purchase issued thereon shall be of any effect, but the holder of any such certificate shall be required to surrender the same to the commissioner, who shall thereupon refund the amount paid, &c. This statute is declaratory of the effect of mistake, illegality, or fraud, and, in this respect, contains no provision novel to the law. It also provides that the certificate shall be required to be delivered up to the commissioner, and the return, upon such delivery, of the money paid. The duty of requiring the delivery of the certificate is undoubtedly devolved upon the commissioner, and if it shall be surrendered, he must refund the money paid. But neither this statute, nor that which gives the commissioner the general charge and supervision of all lands belonging to the state (*Comp. L.* § 2428) confers upon him judicial power to try and determine the validity of a sale. His acts are ministerial. If, from any cause, he should discover that a sale had been made by mistake or fraud, or not in accordance with law, it would be his duty to notify the purchaser of that fact,

and that the law required the surrender of his certificate. But he has no powers conferred to try and determine a charge of fraud, nor to exercise any judicial functions respecting sales made in his office. If such charge be made, the commissioner, if he deems it worthy consideration, may institute legal proceedings to avoid the sale, in which the purchaser, as well as the state, can be heard, and the charge investigated under the sanctions of law. Until the sale shall be adjudged void, for one of the reasons mentioned in the statute, the commissioner has no power to declare it so, and to sell the land to another purchaser; nor has he in any case, before the certificate is surrendered. It is not the policy of the state to create conflicting titles, and no more mischievous policy could be pursued than that of issuing certificates of purchase for the same land to different persons, under circumstances like these before us in this case. Let the writ of mandamus issue.

The other Justices concurred.